Good morning. May it please the Court, Tracy Dressner for Petitioner Dwayne Johnson. There are two issues in this case. One was whether Mr. Johnson's confession was involuntary, and the second whether, if it was indeed involuntary and admitted erroneously, whether that error was harmless. Counsel, isn't the real question whether the State Appellate Court was unreasonable in concluding what it did? Yes. And just for me alone, I'm not speaking for the panel, but the issue that I'd like you to address is the question of whether the State Court's analysis of harmlessness was unreasonable in view of the eyewitness, the victim, and the fact that the jury did not convict of some of the crimes to which he had confessed. Yes. The first, the State applied the wrong harmless error test. The harmless error test. And what the State did was say, if we took the confession away, was there enough evidence to convict Mr. Johnson? And they concluded that there was, based on the eyewitness testimony. Well, the State court of appeals applied a Chapman analysis, which I assume to be correct, on direct review. Well, they cited Chapman, but, in fact, they applied a whether without that confession there was enough evidence to convict, and that's not the appropriate test. I thought they said it was inconceivable that the result could be any different without the confession and without playing word games with the State court. Why isn't that a reasonable application of Chapman to these facts? Well, particularly in this case, what's key to remember is the robbery in this case was a very small part of the case against Mr. Johnson. He was facing, this was a death penalty trial, where there was a murder allegation and two other robbery allegations. And the only thing that the jury convicted Mr. Johnson was of the robbery that were in this case that's at issue. The bulk of the evidence in the murder case came from the same confession that should    allegation in this case, because it was coerced. And what's key is that the jury hung on the murder count, which meant that at least some of the jurors believed that Mr. Johnson had committed a murder. And, in fact, that murder charge was retried two more times. Why doesn't that just cut the other way? I mean, it shows that the jury was able to compartmentalize the confession and that it wasn't influenced by it. Well, what we don't know is whether the jury hung over which count, which degree of murder, the first and second, which I think is the reasonable reading of the record, or whether they hung on guilt or innocence. But regardless, those jurors who believe that Mr. Johnson was guilty of murder had to have relied on his confession, because that was 95 percent of the evidence against Mr. Johnson in the murder case. With respect to the other robbery, which the State court also relies on, that's sort of a red herring, because the court dismissed the other robbery count at the end of the prosecution's case. So the jury never had to decide whether Mr. Johnson was guilty of the second robbery. Counsel, my difficulty is that what you construct is a possible alternative analysis of harmless error that's also reasonable. But we would have to find, in order to hold for your client, that the State court's analysis, which relied heavily on the fact that there was the victim positively identifying him as the robber, that that's unreasonable. And I guess I just don't see how that is an unreasonable analysis under harmless error standard, the highest possible harmless error standard. Well, first, it's whether the confession – it's not whether the jury – if this case had been tried strictly as a robbery case and no confession, would they have convicted him? That's not the test. The test is did the admission of the confession have any kind of substantial and injurious effect on the jury? And we're talking not – not – one, the State court failed to discuss the inconsistencies in the eyewitness testimony, the fact that they had the wrong height, the wrong weight. There was no discussion of the fact that the same – that the pizza delivery man had delivered pizza to Petitioner's home on a number of occasions and was a pizza delivery man in the general area where Mr. Johnson lived. And I think that it's certainly reasonable that he could have recognized Mr. Johnson's photo in the photo lineup from just having seen him around. He did – the pizza delivery man did not see the person who robbed him until after the robbery, when he went and got in his car and drove around and saw a man later who identified as Mr. Johnson. When the actual robbery occurred, he never – and he testified to this – that he never saw the robber's face. So you have a – after the fact identification, you have inconsistent identification. You have his reliance on Mr. Johnson having a receding hairline. His testimony at the trial was that Mr. Johnson had a receding hairline, and that's why he recognized him. Yet there was no mention of a receding hairline when he gave a description of the robber that night to the police. And, in fact, the police report checks that the robber had an afro hairdo. And, again, even without the inconsistencies in the eyewitness testimony, there's no way to quantify the impact of the confession to the murder. Again, this was a very, very small part of a very long trial, and where the bulk of the evidence in the trial was that Mr. Johnson killed the man. And if that confession had been properly excluded, the whole – the whole tenor of this case would have changed. There was quite compelling evidence by Mr. Rodriguez that he followed Johnson, had many opportunities to look at him in that period of time. So is it unreasonable for the State to have concluded that no way would he have been acquitted? Well, the – yes, I still believe it's unreasonable, because you have to look at whether the confession played into the jury's – had any effect on the jury's verdict. And I think – you know, I've got some quotes from the United States Supreme Court talking about how compelling a confession is. The other – with respect to the victim's identification of Mr. Johnson, he never told that to the police. The first time he ever said that he played this cat-and-mouse game where he saw – where he identified Mr. Johnson on numerous occasions right there after the robbery, he said at the trial. When he was interviewed that night by the police, he never said that anything happened from the time of the robbery until the time he made the police report. And again, those are all factors which go into play as to the reliability of the eyewitness identification. And in addition to the – to these factors of unreliability, there's the fact that the confession was integral to the murder case, to the death penalty case that was going on at the same time this robbery was being tried. And again, you have to say this is the jury who originally was looking at a murder in three robbery counts and only convicts Mr. Johnson of one robbery. You don't know how much it was a factor that, well, we can't decide on anything else. We've got this one robbery. You know, he confessed to it. Let's go with that. At least we get him for something kind of thing. Back to what he told the police. He found this policeman, and the policeman came to the site where he had been following the fellow. Didn't he at that point say that he'd been following the man? No. No. And in fact, the defense called that police officer in the defense case to establish just that fact. After he was robbed, he flagged down a police officer. The police officer went in search of the robber, and so did the victim. After, then the victim supposedly had these interactions with this little cat-and-mouse game in the car with the robber, and then met back up with the police officer at the site of the robbery where they actually did the police report. And at that time, he did not say that he had any interactions with the robber from the time he had seen the police officer immediately before that. And that was established by the defense. We reserve the last minute for rebuttal. Surely. Mr. Robbins. Good morning, Your Honors. May it please the Court, California Deputy AG Corey Robbins for affilee. Your Honors, while counsel has pointed to several different reasonable interpretations of the record, I think, as Your Honors were noting, we can't really say that the California court's interpretation of the facts here and of the applicable Federal law was unreasonable. And I think that would be the end of the inquiry under the governing standards here today. Are we applying Brecht? If Your Honors find that the California courts erroneously, the California courts erroneously apply Brecht, I think Your Honors would apply Brecht or would review the district court's ruling under Brecht. This is a de novo review of the district court's legal conclusions. I think the district court did correctly apply Brecht, so I would be confident Your Honors would reach the same conclusion. But even before getting there, I don't think we can really say that the California courts unreasonably applied Chapman. While they might not have used the magic words from Chapman, I think finding it inconceivable that excluding the confession would have affected the result is basically the same thing as what Chapman requires. I do think that the district court correctly applied the Brecht standard. It identified the Brecht standard. It distinguished it from the Chapman standard. It discussed what was required under Brecht. And at the very end, it did mention reasonable probability. But I know that this Court in Baines v. Canberra noted that under California law, certain trial errors are reviewed under the Watson standard, which is a reasonable probability standard. And in Baines, this Court cited the United States Supreme Court precedent and noted that the Watson standard, the reasonable probability standard, is equivalent to the Brecht standard. So I think in referring to a reasonable probability, the district court did not deviate from the proper standard. It noted the proper standard, and it correctly applied it. So, again, I think under the governing standards, you know, if we were in an original fact-finding position, then I think counsel's arguments would maybe be deserving of different type of scrutiny. But in this type of proceeding, given the standards that the well-known standards applicable here, I think we cannot find that the State court's treatment of this was unreasonable. All right. Mr. Robinson, thank you very much. It was short and easy. Thank you. There is error with everything the State court said with respect to the harmlessness. First, the Court says, and they wrote so little, I'm going to read it here, that Rodriguez's uncontroverted testimony establishes that he had ample opportunity to observe Johnson during the robbery as well as afterward. That is false. While he did say he observed Rodriguez, that he observed the robber afterwards, his testimony was that he never saw the face of the robber during the robbery itself. So, factually, the State court was in error. Then they identify that the robber identified Mr. Johnson from the photo spread and that he was 100 percent sure that Johnson was the man who robbed him. That's correct. And then it concludes that it's clear that the jurors did not rely on Johnson's confession. If they had, they would have convicted Johnson of the other charges since he confessed to all of them. On this record, it is unconceivable that the exclusion of the confession would have changed the result. Now, all three of those statements are erroneous. As I said, the we don't know what the jury hung on. It's most likely that they hung between first and second degree murder, not that they believed the confession. It's only if it even had an effect on one juror of the confession, then the error wasn't harmless. They make no discussion of the fact that this was a death penalty case, that this was a murder case, that the murder case was contingent on almost completely on the confession, nor do they discuss at all the numerous inconsistencies in the eyewitness testimony. And so while they make some blanket statements, they're incomplete, partially erroneous, and objectively unreasonable for the reasons that I cited. Thank you. All right. Counsel, thank you both for your argument. The matter of just argument will be submitted.
judges: B. Fletcher, Rymer, Graber